IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EQT PRODUCTION COMPANY, | ) |
| | ) |
| Plaintiff, | ) 2:20-cv-295-NR |
| | ) |
| v. | ) |
| | ) |
| ASPEN FLOW CONTROL, LLC, | ) |
| | ) |
| Defendant/Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WORLDWIDE OILFIELD MACHINE, INC., and ROTORK CONTROLS, INC., | ) |
| | ) |
| Third-Party Defendants. | ) |

### **ORDER DENYING ROTORK'S MOTIONS TO DISMISS**

Rotork has moved to dismiss the claims brought against it by EQT in its amended complaint [ECF 62] and by Aspen in its crossclaims [ECF 69]. After carefully considering the parties' arguments and applying the familiar Rule 12(b)(6) standard, the Court denies Rotork's motions.[1]

### **I.   The Court denies Rotork's request to compel arbitration because it raises issues of fact that cannot be resolved at this stage.**

Rotork moves to compel all claims against it to arbitration based on an arbitration clause in its General Conditions of Sale that it argues were part of the contract between Rotork and Aspen. [ECF 63, pp. 7-10; ECF 70, pp. 8-10]. Aspen has a different view. According to Aspen, Rotork's General Conditions of Sale, including the arbitration clause, were never expressly made part of the

---

[1] Because the Court writes here for the benefit of the parties, it presumes the parties are familiar with the facts and allegations in the pleadings, and thus will not re-state them. The Court, of course, accepts as true all properly pled allegations and reasonable inferences from those allegations.

- 1 -

parties' agreement. [ECF 79, p. 4]. Instead, Aspen alleges that its Purchase Order dated January 5, 2018 "constituted its acceptance of Rotork's offer" to sell Aspen certain "products on the terms memorialized by Aspen in the Purchase Order." [*Id.*]. The Purchase Order does not reference or incorporate the General Conditions of Sale, and thus does not contain the arbitration agreement at issue. [ECF 69-1]. Aspen alternatively argues that, at most, the arbitration clause could only be a part of the parties' agreement under a "battle of the forms" analysis if the General Conditions of Sale did not materially alter the parties' intended transaction. [ECF 79, p. 8].

As is clear from these arguments, Aspen has pled that the General Conditions of Sale do not apply to the agreement between Aspen and Rotork, and the Court must accept Aspen's allegations as true at this stage. This precludes dismissal based on an arbitration clause.[2]

Further, even crediting Rotork's argument that the General Conditions of Sale apply, the Court cannot engage in a "battle of the forms" analysis because it does not have before it Aspen's terms and conditions referenced in its Purchase Order. [ECF 64-1].

Given that the Court cannot determine whether there is even a valid agreement to arbitrate between Aspen and Rotork it consequently cannot find that such an agreement would extend to EQT through transfer, assignment, or any other mechanism.

---

[2] Contrary to Rotork's argument, Aspen has not "judicially admitted" that the General Conditions of Sale control by attaching a copy as an exhibit to its pleading. Aspen did not make any admission regarding its intent to be bound by the General Conditions of Sale and did not allege that the General Conditions of Sale form the bases of its claims against Rotork. [ECF 79, p. 15].

In short, at the pleading stage, the Court cannot dismiss the claims and enforce an arbitration agreement where the parties dispute whether that agreement exists. If Rotork wishes to press this argument, it should take expedited discovery on the issue and move for partial summary judgment if there are no material factual disputes. If, however, there are still factual disputes after discovery, the question will have to be submitted to a jury consistent with 9 U.S.C. § 4.[3]

## II. EQT has adequately pled its warranty claims.

As for EQT's specific claims, Rotork argues that EQT failed to plead with any degree of specificity the products and warranties at issue. [ECF 63, pp. 4-7, 11-16]. The Court disagrees. EQT has pled that the products at issue are the gate valve assemblies it bought, which included Rotork's hydraulic controls. [ECF 60, ¶¶ 37-40, 43]. And EQT has pled the nature of the warranties at issue. *See* [*id.* at ¶¶ 44, 52]. For example, according to EQT,

---

[3] *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) ("To summarize, when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard. In the event that summary judgment is not warranted because the party opposing arbitration can demonstrate, by means of citations to the record, that there is a genuine dispute as to the enforceability of the arbitration clause, the court may then proceed summarily to a trial regarding the making of the arbitration agreement or the failure, neglect, or refusal to perform the same, as Section 4 of the FAA envisions.") (cleaned up).

Rotork warranted to "EQT that the Valves and controls were (1) free from defect in materials and workmanship, (2) free from manufacturing defects, (3) free of design defects, (4) safe and suitable for their intended use by EQT, (5) met EQT's specifications and (6) were merchantable in the manner of goods of this kind." [*Id.* at ¶ 52].

EQT has also alleged enough to state claims for breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, and breach of express warranty that are plausible on their face.

"[F]or breach of the implied warranty of merchantability, anyone injured by the defective product may sue, and anyone in the distributive chain may be sued." *Goodman v. PPG Indus., Inc.*, 849 A.2d 1239, 1245 (Pa. Super. Ct. 2004) (citations omitted).[4] As alleged, EQT was injured by the defective valve assemblies, and Rotork, as the manufacturer of the hydraulic controls, was in

---

[4] The Court applies Pennsylvania substantive law, at least at this juncture. Rotork asserts that New York law applies because its General Conditions of Sale have a New York choice-of-law clause. But, as discussed elsewhere in this order, there is a dispute over whether those terms apply. In the absence of a contractual choice-of-law provision, the Court applies Pennsylvania's choice-of-law rules. Here, there is little doubt that Pennsylvania substantive law clearly applies given that the allegedly defective products at issue were sold to, delivered, and used in Pennsylvania. *See, e.g., Klein v. Council of Chem. Associations*, 587 F. Supp. 213, 220 n. 2 (E.D. Pa. 1984) ("Pennsylvania also has the most significant contacts with this litigation. Plaintiffs reside in Pennsylvania. The alleged injury occurred for the most part in Pennsylvania. The products which allegedly caused the injury may have been manufactured in another state, but they were allegedly sold and used in Pennsylvania. It appears, therefore, that the most significant contacts are with Pennsylvania."). Further, no party argues that any other state has a greater interest in this dispute than Pennsylvania.

the distributive chain. *See* [ECF 60, ¶¶ 2, 55, 66. 68]. As a result, EQT can properly bring this claim against Rotork if it alleges "(1) that the [valve assemblies] malfunctioned; (2) that [EQT] used the product as intended or reasonably expected by the manufacturer; and (3) the absence of other reasonable secondary causes." *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992). EQT has done so. EQT claims that the valve assemblies "failed to perform as required, wore out prematurely and caused operational issues" [ECF 60, ¶ 54], it used the product as intended within the oil and gas industry [*id.* at ¶¶ 3, 47-48, 51, 55], and that Rotork's defect was a contributing cause to the malfunction [*id.* at ¶¶ 53-79].

An implied warranty of fitness for a particular purpose arises when the "seller had reason to know of the buyer's particular purpose at the time of contracting and that the buyer was relying on the seller's expertise." *Altronics*, 957 F.2d at 1105 (citation omitted). To establish a breach of that warranty, the plaintiff "must show that the equipment they purchased from defendant was defective." *Id.* EQT has alleged that Aspen "conveyed to … Rotork the intended purpose shared by EQT for the Valve." [ECF 60, ¶ 47 (cleaned up)]. Aspen also conveyed to "Rotork the specifications shared by EQT for the Valves and Controls," including, specifically, that the Valves "must meet the 'Class 2 – Sandy Service specification.'" [*Id.* at ¶¶ 48, 51 (cleaned up)]. Rotork knew that EQT was relying on Rotork's skill and judgment because Rotork was called on to repair the defective valve assemblies. *See* [*id.* at ¶¶ 57-61]. And, of course, EQT alleged that the product they received from Rotork was defective. [*Id.* at ¶¶ 125-26]. EQT has pled enough facts to state this breach-of-implied-warranty claim. *See, e.g.*, *Expotech Eng'g, Inc. v. Cardone Indus., Inc.*, No. 19-673, 2020 WL 1694543, at *8 (E.D. Pa. Apr. 7, 2020) (denying motion to dismiss where "Expotech contends that it had no reason to know that

Cardone was relying on it for a special purpose at the time the parties executed the CSA," but "the allegations in the Counterclaim [were] to the contrary"); *Lynch v. Gander Mountain Co.*, No. 13-637, 2013 WL 4543517, at *5 (M.D. Pa. Aug. 27, 2013) ("Because Plaintiffs sufficiently plead the necessary elements of the breach of warranty claims, Gander Mountain's motions to dismiss … will be denied.").

As for EQT's express-warranty claim, "Pennsylvania law allows for the enforcement of an express warranty by a third party under circumstances where an objective fact-finder could reasonably conclude: (1) the party issuing the warranty intends to extend the specific terms of the warranty to the third party (either directly or through an intermediary); and (2) the third party is aware of the specific terms of the warranty, and the identity of the party issuing the warranty." *Fairmont Supply Co. v. Cressman Tubular Prods. Corp.*, No. 10-1606, 2011 WL 1327416, at *4 (W.D. Pa. Apr. 6, 2011) (Schwab, J.) (citing *Goodman*, 849 A.2d at 1246). EQT has alleged that Rotork made express warranties to Aspen, and that it knew such warranties were being passed on to EQT as the end-customer. *See* [ECF 60, ¶¶ 34, 44, 46, 49, 50, 52, 111]. The allegations in EQT's amended complaint therefore adequately plead facts which, if proven, could meet both prongs of the test articulated above. *See, e.g.*, *Fairmont Supply*, 2011 WL 1327416, at *5 ("Based on these revised allegations it appears to this Court as though the Plaintiff has adequately pled facts which, if proven, could meet both prongs of the *Goodman* test. Namely, that Defendants … through Cressman, intended to extend the specific terms of the warranty to Plaintiff CNX (the third party), and Plaintiff CNX was well aware of the specific terms of the warranty, as well as the identity of the parties actually issuing the warranty."); *Gen. Instrument Corp. v. Pa. Pressed Metals, Inc.*, 366 F. Supp. 139, 145-47 (M.D. Pa. 1973).

Finally, Rotork's argument that it limited its express warranty and disclaimed any implied warranties through its General Conditions of Sale fails for the same reasons stated above related to its arbitration argument. That is, at this stage, the Court cannot resolve the factual dispute about whether Rotork's General Conditions of Sale were part of any agreement between the parties, and therefore cannot determine whether any limitations contained in them are enforceable.

### III. Aspen too has adequately pled its warranty claims.

Rotork also argued that Aspen has not sufficiently alleged its breach of warranty claims. The Court disagrees. Applying the same legal principles above, Aspen's crossclaims sufficiently pled plausible breach-of-warranty claims *See, e.g.*, [ECF 64, Crossclaims, ¶¶ 25-28, 32, 46, 50-52, 58-60, 63, 65-66, 109-118, 119-127].

### IV. Aspen has stated claims for contribution and common-law indemnity pertaining to implied-warranty claims.

Rotork next argues that it cannot be liable to Aspen for contribution and common-law indemnity because those are tort-based claims, and neither Aspen nor Rotork can be liable to EQT in tort. [ECF 70, pp. 17-18]. Rotork points out that EQT has only asserted two causes of action against Aspen, both based on the parties' alleged respective rights and obligations arising out the parties' contract.

Rotork is only partially right. One claim asserted by EQT against Aspen is for breach of express warranty, which is a contract-based claim. But EQT also brings -implied-warranty claims, which sound in tort under Pennsylvania law. *See Bachtell v. Gen. Mills, Inc.*, 422 F. Supp. 3d 900, 910 (M.D. Pa. 2019). That's because implied warranties do "not emerge from the negotiated terms of the contract, just the business relationship between the parties, rendering

it closer to a tort than contract-based claim." *Id.* at 912 (citations omitted). "This conclusion is further supported by the fact that, for breach of implied warranties, a party need not prove privity of contract." *Id.* (cleaned up). Thus, Aspen may seek contribution and common-law indemnification for the implied-warranty claims, but cannot do so for the express-warranty claim. *Id.* Thus, these claims survive Rotork's motion to dismiss, but will be limited to recovery based only on any proven breach of implied warranties.

### V. Aspen's negligence claim is not barred by the economic-loss or gist-of-the-action doctrines.

Finally, Rotork alleges that Aspen's negligence claim fails as a matter of law based on the economic-loss doctrine and Pennsylvania's gist-of-the-action doctrine. The Court disagrees.

Under the economic-loss doctrine, "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical or property damages." *New Hampshire Ins. Co. v. Dielectric Comm'cns, Inc.*, 872 F. Supp. 2d 458, 461 (E.D. Pa. 2012) (citations omitted). EQT has alleged that it has suffered "significant damages in excess of $18 million," including "lost business and other damages," stemming from valve assemblies that "wore out or failed prematurely and caused washouts." [ECF 60, ¶¶ 7, 106, 109]. Accepting these allegations as true, and drawing all reasonable inferences in favor of Aspen, the Court finds that it is plausible that EQT is seeking damages based on physical or property damage caused by the failure of the valve assemblies. And Aspen is seeking to pass those damages on to Rotork through its negligence claim. In sum, as alleged, EQT is plausibly seeking compensation for separate property damage; this means the economic-loss doctrine does not bar Aspen's negligence claim. *See New Hampshire*, 872 F. Supp. 2d at 462 (denying motion to dismiss negligence claim based on

economic-loss doctrine where there was "a factual dispute as to what constitutes 'other property' in terms of the damaged property and its alleged component parts").[5]

With respect to the gist-of-the-action doctrine, that simply does not apply to the product-liability context. That doctrine bars claims in which the "plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement[.]" *Erie Ins. Exch. v. Abbott Furnace Co.*, 972 A.2d 1232, 1238 (Pa. Super. Ct. 2009) (citation omitted). However, unlike the economic-loss doctrine, which "developed in the context of products liability cases where one party contracts for a product from another party and the product malfunctions," the gist-of-the-action doctrine is "more applicable to non-products liability cases in which the key question is the duty owed between the parties, as opposed to the extent of the property damage." *New Hampshire*, 872 F. Supp. 2d at 463 (cleaned up). Because this case involves the sale of a product (*i.e.*, the valve assemblies), this is "contextually a products liability case and the gist-of-the-action doctrine is inapplicable." *Id.* (cleaned up).

**AND NOW**, this 6th day of November, 2020:

**IT IS HEREBY ORDERED** that Rotork's Motions to Dismiss [ECF 62; ECF 69] are denied.

                                              BY THE COURT:

                                              /s/ *J. Nicholas Ranjan*
                                              United States District Judge

---

[5] If, during discovery, it turns out that EQT is cabining its claims to purely economic losses, then Rotork may be able to seek summary judgment on this basis. Based on the pleadings, though, this argument is premature.