# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EQT PRODUCTION COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>ASPEN FLOW CONTROL, LLC,<br><br>    Defendant/Third-Party Plaintiff,<br><br>    v.<br><br>WORLDWIDE OILFIELD MACHINE, INC., and ROTORK CONTROLS, INC.,<br><br>    Third-Party Defendants. | 2:20-cv-295-NR |

**ORDER DENYING WORLDWIDE'S MOTIONS TO DISMISS**

Worldwide moves to dismiss the claims and crossclaims filed against it by EQT and Aspen, respectively. [ECF 65; ECF 73]. The Court denies the motions as follows.[1]

Worldwide—a Texas-based company—asserts that this Court cannot exercise personal jurisdiction. Under Rule 12(b)(2), considering the allegations in the pleadings and the various affidavits attached by the parties, the Court finds that specific personal jurisdiction exists.

---

[1] Because the Court writes here for the benefit of the parties, it presumes the parties are familiar with the facts and allegations in the pleadings, and thus will not re-state them. The Court, of course, accepts as true all properly pled allegations and reasonable inferences from those allegations. For purposes of Worldwide's Rule 12(b)(2) motion, the Court also analyzes the affidavits and other jurisdictional evidence, but must construe disputed facts in favor of the plaintiff. *See Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).

A specific jurisdiction analysis requires a three-part inquiry: (1) the defendant must have "purposefully directed" its activities at the forum; (2) the litigation must arise out of or relate to at least one of those activities; and (3) if the prior two requirements are met, a court must consider whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). All three requirements are met here.

First, Worldwide purposefully availed itself of the Western District of Pennsylvania, by, for example, (1) travelling to Pennsylvania to meet with EQT on multiple occasions regarding its supply of valves [ECF 76-5, ¶ 3]; (2) selling custom valves to be utilized by EQT on its well sites in Pennsylvania [ECF 64, Answer, ¶¶ 43, 45] ; (3) attending meetings in Western Pennsylvania arranged at Worldwide's request to allow it to inspect the Valves and examine the local operating conditions so that the defects with the Valves could be corrected [ECF 76-5, ¶ 4]: (4) sending and receiving numerous emails to EQT in Pennsylvania, pursuant to which Worldwide arranged for shipments of spare parts to EQT in Pennsylvania, set up multiple meetings in Pennsylvania, sent revised engineering drawings to EQT in Pennsylvania, and made operational recommendations to EQT [ECF 76-5, ¶ 5; ECF 76-7]; (5) making a three-day service call to EQT in Pennsylvania to address the defects with the Valves [ECF 76-6]. These contacts are sufficient for EQT and Aspen to meet their *prima facie* burden of minimum contacts. *Heavy Iron Oilfield Servs., L.P. v. Mountain Equip. of New Mexico, Inc.*, No. 14-39, 2014 WL 3870006, at *5 (W.D. Pa. Aug. 6, 2014) (Kelly, J.) (finding sufficient minimum contacts where defendants "negotiated the contract with Plaintiff in Pennsylvania, mailed the invoice to Plaintiff in Pennsylvania, manufactured the sand traps specifically for Plaintiff located in Pennsylvania and shipped

the sand traps to Plaintiff in Pennsylvania."). Moreover, contrary to Worldwide's arguments, these contacts are not simply a manufacturer placing an off-the-shelf product into a "stream of commerce" that eventually led to Pennsylvania. As alleged, Worldwide made valves designed to EQT's specifications to be used by EQT in Pennsylvania. That is evidence of purposeful availment. *See Guy Chem. Co. v. Romaco S.p.A.*, No. 06-96, 2009 WL 840386, at *11 (W.D. Pa. Mar. 27, 2009) (Gibson, J.) ("Finally, Guy Chemical produced evidence that Romaco S.r.l. established channels to service it as a Pennsylvania customer and attempted to provide solutions to the problems with the Unipac 120. … Drawing all reasonable conclusions in Plaintiff's favor, the Court finds that Plaintiff has made out a prima facie case for the exercise of personal jurisdiction over Romaco S.r.l.").

Second, the litigation here—a dispute over the valves that Worldwide supplied—arises out of Worldwide's contacts with the forum. Worldwide argues that its primary contacts with the forum—in-person visits to Pennsylvania for the retrofit program—are different than the dispute at issue. But a critical part of the claims here involves the retrofit program—that is, Worldwide's failure to cure the alleged defects. *See, e.g.,* [ECF 60, ¶ 61 (Worldwide "acknowledged that the Valve were defective, agreed to retrofit all of them, and embarked upon a program to do so"); *id.* at 117 (alleging Worldwide "failed to repair or replace the nonconforming Valves or to refund the purchase price")]. This is enough to establish a "meaningful link" between Worldwide's contacts with Pennsylvania and the claims in this case. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 324 (3d Cir. 2007) ("Our relatedness analysis, however, requires neither proximate causation nor substantive relevance. It is enough that a meaningful link exists between a

legal obligation that arose in the forum and the substance of the plaintiffs' claims.") (citation omitted).

Third, Worldwide's inclusion in this litigation does not offend "traditional notions of fair play and substantial justice." In fact, Worldwide doesn't argue that it does; and since it bears the burden on this issue, this element is met for this reason alone. *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1999) ("The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy."). In any event, this Court cannot discern anything "so gravely difficult and inconvenient" that would provide a "severe disadvantage" to Worldwide here relative to EQT or Aspen. *Burger King Corp. v.* Rudzewicz, 471 U.S. 462, 478 (1985). This Court has personal jurisdiction over Worldwide. *See O'Connor*, 496 F.3d at 324 ("In sum, the O'Connors have alleged facts that, if true, establish personal jurisdiction over Sandy Lane in Pennsylvania. Sandy Lane purposefully directed its activities at Pennsylvania, the O'Connors' claims arise from or relate to those activities, and no other factors render jurisdiction in Pennsylvania unfair or unreasonable.").

In addition to moving to dismiss for lack of personal jurisdiction, Worldwide makes largely the same arguments that co-Defendant Rotork made in its motions, which the Court denied. *See* [ECF 84]. That is, Worldwide argues that EQT has not sufficiently pled essential elements of the breach-of-warranty claims. [ECF 66, pp. 9-17]. The Court disagrees. EQT pled the products at issue [ECF 60, ¶¶ 37-40, 43], the nature of the warranties [*id.* at ¶¶ 44, 52], and that Worldwide breached those warranties [*id.* at ¶¶ 111-20].

Worldwide also argues that its purchase order controls, which incorporated by reference Worldwide's terms and conditions, and serves to disclaim all implied warranties. [ECF 74, pp. 9-11, 13-15]. But that is

factually disputed by Aspen [ECF 80, pp. 9-13], and so cannot serve as a basis for dismissal of the implied-warranty claims brought by EQT and Aspen [ECF 84].[2]

Finally, Worldwide argues that (1) Aspen cannot bring claims for contribution and common-law indemnity [ECF 74, pp. 15-16], and (2) Aspen's negligence claim is barred by the terms of the parties' contract and the economic-loss doctrine [ECF 74, pp. 16-19]. The Court disagrees for the same

---

[2] Worldwide also makes an argument that the Texas forum-selection clause in its purchase order requires dismissal of the claims by Aspen. [ECF 66, pp. 19-20]. Because the parties dispute whether that the purchase order applies, dismissal based on the forum-selection clause necessarily fails. But even if the purchase order's terms applied, the forum-selection clause wouldn't mandate dismissal. That clause states that the parties "consent" to jurisdiction in Harris County, Texas, waiving any *forum non conveniens* arguments there. This is merely a permissive clause. *See Agri-Marketing, Inc. v. ProTerra Solutions, LLC*, No. 17-627, 2018 WL 1444167, at *3 (E.D. Pa. Mar. 22, 2018) ("A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere, whereas a mandatory clause dictates an exclusive forum for litigation under the contract.") (citations omitted). "Notably, the clause does not contain mandatory language such as 'must or 'shall,' nor does it provide that [Harris County, Texas] is the exclusive venue for" disputes between the parties. *Granada Apartment Holdings, LLC v. Joseph*, No. 18-16, 2019 WL 698303, at *7 n.1 (W.D. Pa. Feb. 20, 2019) (Baxter, J.). "If the contract does not contain a mandatory forum selection clause, then a *forum non conveniens* analysis applies." *Dawes v. Publish Am. LLP*, 563 F. App'x 117, 118 (3d Cir. 2014) (citation omitted). But neither the convenience of the parties nor the public-interest considerations favor transfer. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 134 S.Ct. 568, 581 (2013) (citations omitted). The valve assemblies are in Pennsylvania; the sites at which the valve assemblies were used are in Pennsylvania; this Court can efficiently decide all claims; and Worldwide has not argued that Pennsylvania is an inconvenient forum, just that Texas is arguably more convenient.

reasons set forth in its order denying Rotork's virtually identical arguments. [ECF 84].

**AND NOW**, this 6th day of November, 2020:

**IT IS HEREBY ORDERED** that Worldwide's Motions to Dismiss [ECF 65;ECF 73] are denied.

                        BY THE COURT:

                        /s/ *J. Nicholas Ranjan*
                        United States District Judge