IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EQT PRODUCTION COMPANY, | ) |
| Plaintiff, | ) 2:20-cv-295-NR |
| v. | ) |
| ASPEN FLOW CONTROL, LLC, | ) |
| Defendant/Third-Party Plaintiff, | ) |
| v. | ) |
| WORLDWIDE OILFIELD MACHINE, INC., and ROTORK CONTROLS, INC., | ) |
| Third-Party Defendants. | ) |

## MEMORANDUM ORDER

EQT Production Company has sued Defendants Aspen Flow Control, LLC, Worldwide Oilfield Machine, Inc., and Rotork Controls, Inc. to recover damages totaling about $18.5 million that resulted from allegedly defective and non-conforming emergency shutdown valves. ECF 60. Defendants provided these valves under a Master Service Agreement between EQT and Aspen, and purchase orders issued under it. *Id.* at ¶¶ 1-2. To fulfill its obligations under the MSA, Aspen placed purchase orders for valves and actuators with Worldwide, and orders for hydraulic controls with Rotork. *Id.* at ¶ 42. Aspen then packaged together the valves, actuators, and controls, and sold them as a complete emergency shutdown valves to EQT. *Id.* at ¶ 40.

EQT claims that "[a]lmost immediately upon receipt of the [v]alves, problems arose." *Id.* at ¶ 54. EQT alleges that for "almost a full year," it worked in cooperation with Defendants as they tried to cure the defects of the valves. *Id.* at ¶¶ 61, 79. According to EQT, Defendants' efforts ultimately failed. *Id.* at ¶ 76. As a result, EQT

says it was forced to withdraw all the valves from service and replace them with valves from a different supplier. *Id.* at ¶¶ 77.

Based on this core set of facts, EQT asserts claims of breach of contract and breach of warranty against Aspen, and for breach of warranty against both Worldwide and Rotork. ECF 60. After an amendment and a round of motions to dismiss EQT's claims and Aspen's crossclaims, Worldwide now asserts unjust enrichment and conversion counterclaims against EQT, seeking $535,898.50 in damages. ECF 92. Currently before the Court is EQT's motion to dismiss these counterclaims. ECF 100.

Applying the familiar Rule 12(b)(6) standard, the Court will grant EQT's motion and dismiss the counterclaims, but without prejudice and with leave to amend.[1]

## DISCUSSION & ANALYSIS

### I.  Worldwide's unjust enrichment fails as a matter of law.

Worldwide alleges that EQT was "unjustly enriched" when it accepted valves without compensating Worldwide, "which has resulted in significant profits and income to EQT[.]" ECF 92, Counterclaims, ¶¶ 1-10. EQT argues, in part, that this claim fails as a matter of law because the valves were provided under a contract between Aspen and Worldwide and so Worldwide cannot meet certain required pleading elements. ECF 101, pp. 10-12. After careful consideration, the Court agrees with EQT.

To state a valid unjust enrichment claim under Pennsylvania law, a plaintiff must allege (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such

---

[1] Because the Court writes here to benefit the parties, it presumes the parties are familiar with the facts and allegations in the pleadings, and thus will not re-state all of them. The Court, of course, accepts as true all properly pled allegations and reasonable inferences from those allegations.

circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Merrill Iron & Steel, Inc. v. Blaine Constr. Corp.*, No. 14-221, 2014 WL 2993774, at *8 (W.D. Pa. July 02, 2014) (Mitchell, M.J.) (citing *Joyce v. Erie Ins. Exch.*, 74 A.3d 157, 169 (Pa. Super. Ct. 2013)). "In determining if the doctrine applies, [courts] focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched." *Id.* at *8 (cleaned up). "[T]he Pennsylvania Supreme Court has held that 'a third party is not unjustly enriched when it receives a benefit from a contract between two other parties where the party benefitted has not requested the benefit or misled the other parties.'" *Id.* (quoting *D.A. Hill v. Clevetrust*, 573 A.2d 1005, 1010 (Pa. 1990)). But that is precisely Worldwide's theory of liability against EQT.

Worldwide alleges that "[b]y accepting the valves [and actuators] … from Aspen, EQT has received the benefit and value of those [products] … without compensating Aspen … or Worldwide for the right to the gate valves [and] actuators[.]" ECF 92, Crossclaims, ¶ 3. But Worldwide admits that it sold those valves and actuators to Aspen "subject to [a] [p]urchase [o]rder from Aspen to Worldwide."[2] *Id.* at Affirmative Defenses, ¶ 154. Thus, absent allegations that EQT requested a benefit directly from Worldwide or misled Aspen and Worldwide to perform under their contract, Worldwide's unjust enrichment should be dismissed. Worldwide fails on both counts.

That is, Worldwide does not allege that EQT requested the valves directly from it—in fact, it says the exact opposite happened. *See id.* at Affirmative Defenses, ¶¶ 141 ("Aspen did not communicate to Worldwide either the terms of its Master Service

---

[2] That Worldwide sold all its valves to Aspen pursuant to written contracts is further supported by the fact that Worldwide seeks the exact same damages for unjust enrichment against EQT as it does for breach of contract against Aspen— $535,898.50. *Compare* ECF 91, Counterclaims, ¶ 8 *with* ECF 92, Counterclaims, ¶ 11.

Agreement with EQT or its purchase order with EQT."), 153 ("Worldwide did not deal directly with EQT[.]"), 154 ("Worldwide's sale of the gate vales and actuators were sold subject to the Purchase Order from Aspen"[.]). Nor does Worldwide allege that EQT misled it or Aspen in any way. *See* ECF 92, Counterclaims, ¶¶ 1-12. This failure dooms Worldwide's unjust enrichment claim.[3]

This would end the analysis, but in its briefing, Worldwide pivots by arguing that "something quasi-contractual took place" with EQT as a result of it directly interacting with EQT to coordinate the repair of the alleged non-conforming valves, which the parties call the "retrofit program." ECF 110, p. 7. The problem with this argument is that Worldwide did not plead the predicate facts for it. Indeed, the word "retrofit" does not appear in a single paragraph of Worldwide's counterclaim. ECF 92, Counterclaims, pp. 33-35. Since it is not pled, Worldwide cannot save its counterclaim by relying on the retrofit program as the extra-contractual benefit conveyed to EQT.[4] *Commw. of Pa. ex. rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173,

---

[3] Worldwide argues that it wasn't required to plead these other facts because "Aspen has challenged the contract between Worldwide and Aspen," and therefore "the status of that contract is in doubt." ECF 110, p. 13. This argument also misses the mark because Aspen's "battle of the forms" argument does not challenge the validity of its contracts with Worldwide, just the precise terms of those contracts. *Flender Corp. v. Tippins Int'l., Inc.*, 830 A.2d 1279, 1284 (Pa. Super. Ct. 2003). Put differently, sometimes a party can plead unjust enrichment in the alternative in the event that a contract is deemed to be invalid. Worldwide cannot do that because it delivered its valves to Aspen pursuant to a contract—either its form, Aspen's form, or some combination of the two. But, in the end, it was done by contract.

[4] In support of its argument based on the retrofit program, Worldwide cites a declaration that EQT attached to its brief in opposition to the motions to dismiss EQT's amended complaint filed by Defendants. ECF 110, p. 7 (citing ECF 76-4). Aside from not being a part of the pleadings in this case, that declaration does not establish that the retrofit program existed apart from EQT's contractual relationship with Aspen. EQT, for its part, insists that the retrofit program was established through Aspen in conjunction with Worldwide. ECF 60, ¶ 5. At best, through allegations to the contrary, Worldwide could create a dispute of fact about how the

181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (cleaned up)).

That is not to say, though, that Worldwide could never adequately plead a claim for unjust enrichment based on the retrofit program. To do so, Worldwide would need to describe, in its own words, the extent and nature of its direct interactions with EQT, the precise benefit conferred on EQT through the retrofit program, and how that benefit exists outside of any existing contractual framework. Moreover, to the extent Worldwide would base its claim on EQT misleading it and Aspen into performing under their contract, the factual and legal basis for those allegations must be plausibly pled. Because the Court cannot definitively say that Worldwide cannot set forth these facts, the Court will grant EQT's motion to dismiss the unjust enrichment counterclaim without prejudice. Worldwide can amend its counterclaim if it has a good-faith basis to make the required allegations, as set forth above.

## II. Worldwide's conversion claim also fails as a matter of law.

Worldwide next alleges that EQT "interfered with, and deprived, Worldwide of its right of property in, or use or possession of Worldwide's supplied gate valves and actuators." ECF 92, Counterclaims, ¶ 14. As a result of EQT's alleged act of conversion, Worldwide claims those products are "unmarketable and unusable for other oil and gas development[.]" *Id.* at Counterclaims, ¶ 15. EQT responds that Worldwide's "conversion claim fails [as a matter of law] because (a) [Worldwide] sold the Valves to Aspen and thus relinquished any right, title or interest to the Valves; (b) EQT possesses the Valves with the owner's consent and with lawful justification pursuant to the terms of the MSA; (c) [Worldwide] never demanded the return of the

---

retrofit program came about and was executed. But as the case currently stands, those allegations simply do not exist in the relevant pleadings.

Valves; and (d) [Worldwide] rejected EQT's request to return this equipment for a refund." ECF 101, p. 3.  The Court agrees with EQT.

"[C]onversion is the deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification." *Universal Premium Acceptance Corp. v. York Bank & Tr. Co.*, 69 F.3d 695, 704 (3d Cir. 1995) (cleaned up).  "Where one lawfully comes into possession of the chattel, a conversion occurs if a demand for the chattel is made by the rightful owner and the other party refuses to deliver." *Rosemont Taxicab Co. v. Phila. Parking Auth.*, 327 F. Supp. 3d 803, 828 (E.D. Pa. 2018).  Here, Worldwide's conversion claim fails from the start because it has not pled it has any right to the valves and actuators that are the subject of the claim.

Worldwide concedes that it voluntarily sold the valves and actuators to Aspen under a purchase order.  ECF 92, Affirmative Defenses, ¶ 154.  Worldwide further concedes that after the equipment was sold and delivered to Aspen, "Aspen was free to sell [it] to any of its own customers, combine Worldwide's products with components from other manufacturers, use the products for its own purposes or hold the products in Aspen's inventory."  *Id.* at Affirmative Defenses, ¶ 145.  "Neither Aspen nor Worldwide had any power or authority to negotiate on one another's behalf or bind the other to any third-party without otherwise entering into an agreement." *Id.* at Affirmative Defenses, ¶ 136.  Thus, Worldwide has pled that it had no right in the valves and actuators following the sale of the equipment to Aspen.  *Id.* at Affirmative Defenses, ¶¶ 135-36, 143, 145, 154.

What Worldwide did have, according to its own allegations, was a contractual right to payment.  But "a contractual right to payment does not suffice to create a property interest for purposes of a conversion claim." *It's Intoxicating, Inc. v. Maritim Hotelgesellschaft mbH*, No. 11-2379, 2013 WL 3973975, at *22 (M.D. Pa. July 31,

2013) (dismissing conversion claim where plaintiff voluntarily shipped cosmetic products to the defendant).

Even if Worldwide had a right to the valves after they shipped, the conversion claim would still fail because Worldwide did not allege that it demanded that Aspen or EQT return the valves to it. ECF 92, Affirmative Defenses, ¶¶ 13-17. "[A] demand and refusal is an essential element to a claim for conversion. Without this, there can be no unreasonable withholding." *WhiteSand Research, LLC v. Sehn*, No. 1123 WDA 2017, 2018 WL 2728847, at *9 (Pa. Super. Ct. June 7, 2018) (citing *Norriton E. Realty Corp. v. Central-Penn Nat'l Bank*, 254 A.2d 637 (Pa. 1969)). In truth, what Worldwide is demanding is payment. *See* ECF 92, Counterclaims, ¶ 16. And, as stated above, that simply does not cut it.

Like the unjust enrichment claim, however, the Court cannot say that amendment here of the conversion claim would be entirely futile. Worldwide alludes in its brief to providing valves directly to EQT outside of the scope of any contract, and so may arguably be able to amend its claim to state a conversion claim (assuming it could also allege that it demanded the return of those valves). Therefore, the Court will dismiss Count 2, but without prejudice.[5]

\* \* \*

---

[5] Worldwide's final effort to save its counterclaims is that application of the so-called "Goose-Gander Rule" warrants denial of EQT's motion. ECF 110, pp. 4-6. That is, Worldwide argues that this Court should deny EQT's motion to dismiss on the same basis that it denied Worldwide's motion to dismiss EQT's tort claims because the circumstances are similar and both motions are "based upon the gist-of-the-action doctrine." *Id.* Contrary to Worldwide's suggestion, however, the circumstances are materially different. The Court previously concluded that EQT's breach of implied warranty claims sounded in tort and so Aspen had a right to seek damages for contribution and common-law indemnification. ECF 84, pp. 7-8. Implied warranty claims aren't the subject of this motion, though; unjust enrichment and conversion claims are. This different set of claims requires a different, independent analysis that does not necessarily implicate the gist-of-the-action doctrine, as set forth above.

- 8 -

**AND NOW**, this 23rd day of December, 2021:

**IT IS HEREBY ORDERED** that EQT's motion to dismiss Worldwide's counterclaims (ECF 100) is **GRANTED**, and Worldwide's counterclaims are dismissed without prejudice.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge
