IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EQT PRODUCTION COMPANY, | ) |
| Plaintiff, | ) 2:20-cv-295-NR |
| v. | ) |
| ASPEN FLOW CONTROL, LLC, | ) |
| Defendant/Third-Party Plaintiff, | ) |
| v. | ) |
| WORLDWIDE OILFIELD MACHINE, INC., and ROTORK CONTROLS, INC., | ) |
| Third-Party Defendants. | ) |

## **ORDER**

Presently before the Court is Aspen Flow Control, LLC's renewed motion for judgment on the pleadings. ECF 105. In the motion, Aspen argues that EQT Production Company's breach-of-contract claim against it should be dismissed because it is "subsumed within EQT's corresponding Breach of Warranty claim." ECF 106, p. 1. Specifically, Aspen believes that the breach-of-contract claim "is predicated upon alleged breaches that fall within the warranty provisions and representations within the [Master Services Agreement signed by the parties], and by extension, also form the bases for EQT's Breach of Warranty claim." *Id.* at p. 3.

EQT disagrees. It claims that its two theories are distinct. According to EQT, it is alleging that "emergency shutdown valves … Aspen supplied to EQT on multiple occasions over an extended period pursuant to the MSA failed to meet the specifications and warranties provided thereunder" **and** that "Aspen breached multiple other contractual obligations set forth in the MSA." ECF 113, p. 1. EQT further argues that dismissal of its breach-of-contract claim is precluded because

- 1 -

"there are factual disputes between the parties as to whether EQT accepted, rejected, or accepted and then revoked acceptance of the [v]alves sold by Aspen." *Id.* at p. 2.

After careful consideration, and applying the familiar Rule 12(c) standard,[1] the Court will deny Aspen's motion, but will do so without prejudice to Aspen raising these same arguments again at a later stage of the case.

A breach-of-contract claim that rests on the same allegations as a warranty claim is duplicative and subject to dismissal. *Cooper-Booth Transp. Co., L.P. v. Daimler Trucks of N. Am., LLC*, No. 17-3884, 2018 WL 1940527, at *4 (E.D. Pa. Apr. 24, 2018). It is not enough for the claims to be "similar," however, they must be truly

---

[1] The standard for deciding a motion for judgment on the pleadings filed under Federal Rule of Civil Procedure 12(c) is not materially different from the standard for deciding a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Kaite v. Altoona Student Transp., Inc.*, 296 F. Supp. 3d 736, 739 (W.D. Pa. 2017) (Gibson, J.) (cleaned up). The only difference is that "a Rule 12(b) motion is filed before a 'responsive pleading' is filed," while "a Rule 12(c) motion may be filed 'after the pleadings are closed.'" *Id.* (cleaned up). "A court presented with a motion for judgment on the pleadings must consider the plaintiff's complaint, the defendant's answer, and any written instruments or exhibits attached to the pleadings." *Id.* (cleaned up).

To survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up).

Because the Court analyzes a motion for judgment on the pleadings under the same standard as a motion to dismiss, "a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Zimmerman v. Corbett*, 873 F.3d 414, 417-18 (3d Cir. 2017) (citation omitted).

duplicative of one another to create a redundancy that must be remedied by the Court through dismissal. *Meyers v. Sudfeld*, No. 05-2970, 2006 WL 401855, at *5 n.3 (E.D. Pa. Feb. 21, 2006). While the Court agrees that there is some overlap between aspects of the two claims, some parts appear to set out distinct theories of liability.

For example, EQT alleges that Aspen failed to supply sufficient labor and materials to comply with all provisions of the MSA. ECF 60, ¶ 82. Aspen argues that because it supplied EQT with products only, this goes to the MSA's representations and warranties for the assembled valves. ECF 114, p. 2. But Section 4.1, which is entitled "Scope of Related Services," states that EQT could request Aspen to "perform installation, start-up, training, testing, warranty, and/or other services in connection with the Goods being delivered." MSA, § 4.1. While Aspen might dispute whether such a request was ever made, that's a dispute that must be clarified through discovery.

Similarly, EQT alleges that Aspen failed to meet schedule provided by EQT. ECF 60, ¶ 94. Aspen argues that any failure in the delivery schedule relates only to the so-called "retrofit program," which was EQT's invocation of the warranty allowing for repair or replacement. ECF 114, p. 2. It's not clear, at this stage, that EQT's claim is cabined so narrowly, however. Section 3.2 of the MSA, which is separate from the representations and warranties section, establishes Aspen's requirement to meet EQT's schedule. MSA, § 3.2. Viewing the allegations in EQT's favor, as the Court must, EQT is plausibly setting out a claim for something different from its invocation of the warranty, as Aspen claims.

As a result, the Court finds that even if dismissing the breach-of-contract claim "may excise an apparent redundancy, at this stage of litigation it is appropriate to allow [EQT] to refine [its] theories of liability with the aid of discovery." *Meyers*, 2006 WL 401855, at *5 n.3 (citing *Tower Air, Inc. v. Nachtomi*, 416 F.3d 229, 242 (3d Cir.

2005)).[2]  If it turns out that, in fact, the information and testimony produced in discovery only supports a breach-of-contract claim that overlaps with the breach-of-warranty claims, then Aspen can raise these same arguments at summary judgment or trial.

*   *   *

**AND NOW**, this 23rd day of December, 2021:

**IT IS HEREBY ORDERED** that Aspen's renewed motion for judgment on the pleadings (ECF 105) is **DENIED**, without prejudice.  Aspen can raise these same arguments at summary judgment or trial on a more fulsome factual record, if it has a good-faith basis to do so.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge

---

[2] Even if the claims were not distinct, as outlined above, the Court would still deny Aspen's motion because there is a factual dispute (at least as pled) over whether EQT accepted or rejected the valves at issue.  "A buyer who effectively rejects or revokes the acceptance of goods may prevail on a breach of contract claim, while one who accepts goods can only recover under breach of warranty, be it express or implied."  *David's Bridal, Inc. v. Cels Enters., Inc.*, No. 13-2870, 2015 WL 13651382, at *6 (E.D. Pa. Mar. 20, 2015).  Because it is unclear whether the goods were accepted or rejected, EQT can, at a minimum, plead its two claims in the alternative at this early stage of the case.